UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HAROLD RUSSELL BOVEE, II, | ) | CASE NO. 1:12CV2685 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | **REPORT AND RECOMMENDATION** |
| ACTING COMMISSIONER OF | ) | **OF MAGISTRATE JUDGE** |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Harold R. Bovee, II ("Plaintiff") seeks judicial review of the final decision of Carolyn W. Colvin ("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying his applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  ECF Dkt. #1.  For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and dismiss Plaintiff's case with prejudice.

## I.      PROCEDURAL AND FACTUAL HISTORY

On April 13, 2008, Plaintiff applied for SSI and DIB alleging disability beginning on August 20, 2008, when he was twenty-eight years of age.  ECF Dkt. #11 ("Tr.") at 119-125, 42.[2]  Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013 ("DLI").  Tr. at 23. The SSA denied Plaintiff's application initially and on reconsideration. Tr. at 72-76. Plaintiff requested an administrative hearing, and, on April 21, 2011, an ALJ conducted an administrative hearing *via* videoconference and accepted the testimony of Plaintiff, who was

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]References to the administrative record in this case refer to the ECF docket number of the cited document and the page number assigned to cited pleading by the ECF system, which can be found by way of the search box at the top of the page on the ECF toolbar.  The page numbers correspond to the page numbers assigned in the transcript.

represented by counsel, and Robert Edwards, an impartial vocational expert ("VE"). Tr. at 38-69. On April 26, 2011, the ALJ issued a Decision denying benefits. Tr. at 21-37. Plaintiff filed a request for review, which was denied by the Appeals Council on August 8, 2012. Tr. at 1-6.

On October 26, 2012, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On March 8, 2013, Plaintiff filed a motion to remand the case under sentence six of 42 U.S.C. §405(g) and a brief in support of the motion. ECF Dkt. #15, 16. On April 5, 2013, Defendant filed a brief on the merits. ECF Dkt. #17. Plaintiff filed a reply brief on April 15, 2013. ECF Dkt. #18. On April 18, 2013, Defendant filed a sur-reply. ECF Dkt. #19.

## II.   <u>SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION</u>

The ALJ determined that Plaintiff suffered from mood disorder, scoliosis, and narcolepsy, which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c). Tr. at 23. The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926 ("Listings"). Tr. at 25.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff is limited to lifting and carrying ten pounds frequently and twenty pounds occasionally, standing and walking six hours in an eight-hour day, sitting eight hours in an eight-hour day, performing simple, repetitive, non-production job tasks that do not require frequent interaction with the public, that involve no climbing, no more than occasional bending and squatting, no work at heights, and no operation of a motorized conveyance. Further, Plaintiff must be permitted to adjust his position between sitting and standing every forty minutes and needs to avoid extreme environmental conditions. Tr. at 26.

The ALJ ultimately concluded that, although Plaintiff cannot perform his past relevant work as a truck driver, there were jobs that existed in significant numbers in the national economy that Plaintiff can perform, including the representative occupations of office helper, unskilled security

guard, and mail clerk.  Tr. at 30.  As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

### III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to benefits.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see   20 C.F.R.   § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.    STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings

of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). An ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001). Thus, the ALJ has a " 'zone of choice' within which he can act without the fear of court interference." *Id.* at 773.

**V.**     **ANALYSIS**

Sentence six of § 405(g) addresses situations where a claimant submits new evidence that was not presented to the ALJ but that could alter the ALJ's ultimate decision. Sentence six of §405(g) provides, in relevant part:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both . . . .

42 U.S.C. § 405(g).

A "sentence six" remand is appropriate "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir.2010). Evidence is "new" if it did not exist at the time of the administrative proceeding and "material" if there is a reasonable probability that a different result would have been reached if introduced during the original proceeding. *Id.* "Good cause" is demonstrated by "a reasonable justification for the failure to acquire and present the evidence for

-4-

inclusion in the hearing before the ALJ." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001).  "The party seeking a remand bears the burden of showing that these [ ] requirements are met." *Hollon ex rel. Hollon v. Comm'r of Social Security*, 447 F.3d 477, 483 (6th Cir.2006).  Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486.

To show good cause a claimant is required to detail the obstacles that prevented him from entering the evidence in a timely manner.  *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir.2007). "The mere fact that evidence was not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement." *Courter v. Commissioner of Social Security*, 479 Fed. Appx. 713, 725 (6th Cir.2012). The Sixth Circuit "takes a harder line on the good cause test' with respect to timing and thus requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing.' " *Id.*, quoting *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir.1986).

In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *Melkonyan v. Sullivan*, 501 U.S. 89, 98, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991). "Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Id.*

" 'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.' " *Payne v. Comm'r of Soc. Sec.*, No. 1:09–cv–1159, 2011 WL 811422, at * 12 (W.D.Mich. Feb.11, 2010) (finding that evidence generated after the hearing and submitted to the Appeals Council for the purpose of attempting to prove disability was not "new").

Plaintiff contends that this matter must be remanded to the ALJ to consider an assessment of ability to do work related activities (mental) completed by Sarbot Ajit, M.D. on April 25, 2011.Tr. at 601-602.  In the assessment, Dr. Ajit concludes that Plaintiff is markedly limited in virtually every category with the exception of two:  Dr. Ajit opines that Plaintiff is extremely limited in his ability to respond appropriately to changes in the work setting, and moderately limited in his ability to

perform simple tasks.  Dr. Ajit further opines that Plaintiff's limitations have existed since August 20, 2008, and he attributed Plaintiff's limitations to three diagnoses: Post-traumatic Stress Disorder, Major Depressive Disorder/Recurrent, and Attention Deficit Disorder.  Dr. Ajit writes, "Severe impulse control issues unable to cope and [illegible.]" *Id.* at 602.  Dr. Ajit ultimately concludes that Plaintiff will be absent from work more than three times a month.

Attached to the motion to remand is correspondence addressed to the ALJ and dated April 27, 2011, wherein Plaintiff's counsel asked the ALJ to briefly delay his decision in order to allow counsel to submit "relevant information" from Plaintiff's treating physician. ECF Dkt. #16-1 at p. 2. The hearing was conducted on April 21, 2011 and the ALJ issued his decision on April 26, 2011.

**A.    Evidence in the record**

Although Dr. Ajit's assessment was not a part of the record before the ALJ, Dr. Ajit's medical notes, dated December 14, 2009 to January 13, 2011, and a basic medical form completed by Dr. Ajit on April 11, 2011 for the Ohio Department of Job and Family Services were included. Tr. at 596-598.  In the ODJFS form completed on Plaintiff's behalf, Dr. Ajit lists psychological/psychiatric findings of depression, anxiety, bouts of major depressive disorder, and narcolepsy.  He opines,"[Plaintiff] struggles with depression and severe anxiety. Bouts of severe depression, no energy, significant guilt feelings.  Hopelessness and [illegible]. [Plaintiff] has significant narcolepsy."  Tr. at 596.

Plaintiff began treating with Dr. Ajit on December 14, 2009, when he was twenty-nine years of age, with complaints of depression, irritability, and anxiety. Tr .at 454.  Dr. Ajit described Plaintiff as alert, oriented, a little bit tired, and fatigued.  Dr. Ajit further observed that Plaintiff's thought process was normal and his mood seemed mildly depressed.  He assigned a Global Assessment of Functioning ("GAF") score of 48[3] and diagnosed mood disorder due to general medical condition, depression NOS, and anxiety disorder NOS.

---

[3]A GAF score of forty-one to fifty indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job, cannot work).

Plaintiff had been diagnosed with narcolepsy approximately one year prior to his first appointment with Dr. Ajit and was prescribed Provigil.  He reported that the medication helped him, keeping him awake, alert, and active, but he had to quit his truck driving job, which he had performed for the previous eight or nine years.  Evidently, Plaintiff was originally prescribed Temazepam.  In August of 2009, Plaintiff was involved in a high speed chase with police after he failed to pay for gasoline.  He told Dr Ajit that he had no memory of the event, and attributed the event to the combination of Temazepam and muscle relaxants.  Dr. Ajit acknowledged that Plaintiff had problems with primary support and legal issues.  Plaintiff told Dr. Ajit that, despite his success with Provigil, he was not taking the medication due to his concerns about sexual side effects.  As a consequence, Dr. Ajit discontinued Provigil, and prescribed Haldol.  He scheduled a follow up appointment in two weeks. Tr. at 454.

Plaintiff returned to Dr. Ajit on February 3, 2010.  Tr. at 594.  Dr. Ajit wrote that Plaintiff was tolerating his medications with no side effects but continued to have depressive symptoms. Plaintiff did not report any guilt or hopeless feelings. Dr. Ajit prescribed Lexapro 10 mg.  At his February 23, 2010 appointment, Plaintiff reported that he had been more depressed, irritable, and anxious for the last several days.  Tr. at 592.  He was experiencing interpersonal stressors and increased ruminative thoughts.  He was having difficulty sleeping at night, and suffering from decreased energy, concentration, and focus.  Dr. Ajit increased Plaintiff's Lexapro prescription to 20 mg., and recommended immediate services and medical treatment if Plaintiff continued to struggle with depressive symptoms and ruminative thoughts.  Nonetheless, Dr. Ajit described Plaintiff as alert, oriented, cooperative, and engaged.

Plaintiff returned to Dr. Ajit on March 4, 2010 and reported improvement in his irritability and reduced ruminative thoughts.  Plaintiff stated that he had recently restarted Lexapro and was "feeling better." Tr. at 590.  He reported no side effects from the medication and indicated that his ability to deal with stressors was improved.  In medical notes dated March 25, 2010, Dr. Ajit indicated that he had treated Plaintiff in his "private office in Madison" due to an emergency.  At that time, Dr. Ajit prescribed Pristiq (in place of Lexapro) and increased Plaintiff's dosage of Adderall for his narcolepsy.  Tr .at 588.  At a March 25, 2010 appointment, Plaintiff stated that his

-7-

mood and concentration had improved but he was still having difficulty sleeping at night. Dr. Ajit noted that Plaintiff's thought process was normal and his affect was congruent.

At Plaintiff's May 3, 2010 appointment, Plaintiff reported sleeping "fairly well at night" and "elaborated, confronted, and clarified personal stressors." Tr. at 585. He further reported that his energy levels were "fairly good." Dr. Ajit described Plaintiff as alert, oriented, cooperative, and well mannered. Dr. Ajit prescribed Chantix. Plaintiff returned to Dr. Ajit on May 26, 2010 and reported ongoing struggles with depression, irritability, and anxiety related to social stressors. Dr. Ajit characterized Plaintiff's mood as "mildly depressed related to interpersonal conflicts and relationship issues." Tr. at 583.

At his June 29, 2010 appointment, Plaintiff told Dr. Ajit that he received a sentence of three years of probation and his drivers' license was suspended as a result of the police chase in August of 2009. He reported continued financial problems but indicated that he was sleeping "fairly well" at night and his interests were good. Dr. Ajit described him as alert, oriented, cooperative, and well-mannered. Tr. at 578. Plaintiff's medications were continued at the current dosages. Follow up was scheduled for one month.

After repeated efforts to contact Plaintiff, his file was closed on August 25, 2010. Tr. at 574. However, Plaintiff returned to Dr. Ajit on December 17, 2010 and requested to speak to a nurse. He explained that he lost his insurance and requested samples of Pristiq. Samples were provided with Dr. Ajit's authorization, and Plaintiff was told to call five to seven days before he needed additional samples. Tr. at 573.

At an appointment on January 13, 2011, Plaintiff told Dr. Ajit that he had lost his insurance and had stopped taking his Adderall, and that his mood had become destabilized. Plaintiff was unable to focus and concentrate, he was sleeping a lot, and he was significantly depressed. Dr. Ajit prescribed Nuvigil 150 mg. Tr. at 570.

### B. Hearing testimony

At the hearing, Plaintiff testified that he could not work because of his narcolepsy. Tr. at 48. Plaintiff further testified that he has seven or eight "good days" per month. Tr. at 57. On those days, he wants to do "anything and everything." Tr. at 48. However, ninety percent of the time, Plaintiff

-8-

wants to sleep.  Plaintiff testified that he sleeps sixteen hours a day and that his prescribed medication does not help. Tr. at 56-57.  At the time, he was prescribed Citalopram 40 mg. for depression, Amlodipine Besylate, 10 mg. for his heart, Lisprinol, 10 mg. for his blood pressure, ProAir, 8.5 mg. as needed for asthma, and Nuvigil, 250 mg. for his narcolepsy. Tr. at 50.  Plaintiff stated that his medication for depression helps somewhat.  Tr. at 58.

### C.    Sentence Six remand

Plaintiff contends that Dr. Ajit's assessment dated April 25, 2011 is new evidence that was unavailable at the hearing that was conducted on April 21, 2011, by virtue of the fact that the assessment had yet to be completed.  Plaintiff also contends that Dr. Ajit's assessment is material in the sense that Dr. Ajit clearly concludes that Plaintiff suffers from marked limitations in virtually every category of work-related activities.  Finally, Plaintiff asserts that good cause exists for his failure to provide a copy of the assessment to the ALJ, because Plaintiff had submitted a copy of the assessment form to Dr. Ajit on February 4, 2010, but Dr. Ajit did not complete the form until April 25, 2011.  A copy of the February 4, 2010 correspondence requesting completion of the form  is attached to Plaintiff's reply brief. ECF Dkt. #18-1.  Plaintiff's counsel writes, "The undersigned's firm had been in pursuit of a medical opinion from Dr. Ajit for over a year, but did not receive work that Dr. Ajit was amenable to completing same until after [Plaintiff's] hearing . . . ."  ECF Dkt. #18 at p. 5.

Defendant contends that Dr. Ajit's assessment was available at the time of the hearing, but for Plaintiff's lack of due diligence.  Defendant argues that Plaintiff's failure to acquire the assessment prior to the hearing, despite its availability, contravenes Plaintiff's contentions that the assessment is new and that good cause exists for Plaintiff's failure to acquire it before the hearing. Defendant argues that, although Plaintiff established that he requested the assessment in 2010, there is no evidence that Plaintiff made any additional effort to acquire the assessment, despite numerous appointments in 2010 and 2011, nor did his counsel request at the hearing that the ALJ keep the record open in order that additional evidence may have been considered.  Furthermore, Defendant contends that Dr. Ajit's assessment is inconsistent with his treatment notes, and, as a consequence,

immaterial in the sense that the ALJ would not have reached a difference disposition of the claim had the assessment been included in the record.

Having considered the arguments of both sides, the undersigned recommends that the Court deny Plaintiff's motion to remand this matter pursuant to sentence six and affirm the decision of the ALJ.  First, Defendant correctly argues that Dr. Ajit's assessment was not "new" to the extent that the assessment could have been acquired prior to the hearing.  While it is true that Plaintiff submitted the assessment form to Dr. Ajit in early 2010, the letter attached to Plaintiff's reply brief is only evidence that Plaintiff requested completion of the form.  There is no evidence that Plaintiff made any additional effort to acquire the assessment until after the hearing, despite the fact that Dr. Ajit was a treating physician.  It is also important to note that Dr. Ajit's medical records contain consistent references to responses to records requests.  " 'Good cause' is shown for a sentence-six remand only 'if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability.' " *Payne*, *supra* at * 12 (W.D.Mich. Feb.11, 2010).  Here, it appears that Plaintiff's counsel recognized that Plaintiff failed to carry his burden of proof at the hearing, and then sought additional evidence in an effort to revive his claims.

Moreover, Plaintiff has also failed to demonstrate that Dr. Ajit's assessment is "material" in light of Dr. Ajti's medical records.  Dr. Ajit's notes dated from late 2009 to early 2011, do not support his extreme conclusions regarding Plaintiff's limitations.  According to Dr. Ajit's notes, Plaintiff responded well to treatment and reported feeling better when he was following his medication regimen.  Furthermore, Dr. Ajit's ODJFS form indicated that Plaintiff suffered from depression, anxiety, bouts of major depressive disorder, and narcolepsy.  Despite these conclusions, the ALJ did not find that Plaintiff was disabled.  The ALJ recognized the Dr. Ajit's notes failed to establish disability when he observed that "although [Plaintiff] has concerns that he is bipolar, [Dr. Ajit did] not conclude that [Plaintiff's] signs and symptoms establish [sic] other than mood disorder, NOS and/or depression, NOS, and anxiety disorder, NOS."  Tr . at 24.  Simply stated, it is not reasonably probable that the ALJ would have reached a difference determination even if Dr. Ajit's assessment  were a part of the record.

-10-

Because Dr. Ajit's assessment does not constitute new and material evidence, and Plaintiff has failed to demonstrate good cause  for his failure to acquire the assessment prior to the hearing, the undersigned recommends that the Court conclude that a sentence six remand is not appropriate in this case.

### VI.   CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court DENY Plaintiff's motion to remand, ECF Dkt. #15, AFFIRM the ALJ's decision, and DISMISS Plaintiff's case with prejudice.

DATE: November 26, 2013                    */s/George J. Limbert*
                                       GEORGE J. LIMBERT
                                       UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).